Surjit P. Soni (State Bar No. 127419)
M. Danton Richardson (State Bar No. 141709)
Leo E. Lundberg, Jr. (State Bar No. 125951)
THE SONI LAW FIRM
35 North Lake Ave., Suite 720
Pasadena, California 91101
(626) 683-7600 Telephone
(626) 683-1199 Fax

SURJ@SONILAW.COM
DANTON@SONILAW.COM
LEO@SONILAW.COM

Attorneys for Plaintiffs,
BIBIJI INDERJIT KAUR PURI

FILED

CONFORMED COPY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIBIJI INDERJIT KAUR PURI, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>YOGI BHAJAN ADMINISTRATIVE TRUST; SHAKTI PARWHA KAUR KHALSA, Trustee; EK ONG KAR KAUR KHALSA, Trustee; and DOES 1 through 10,<br><br>Defendants. | **CASE NO.:  CV 11-9503 GW (SHx)**<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>1. **FEDERAL STATUTORY AND COMMON LAW TRADEMARK INFRINGEMENT (15 U.S.C. §1051 et seq.) OF "YOGI" AND "YOGI TEA" TRADEMARKS;**<br>2. **VIOLATION OF SECTION 43(a) OF THE LANHAM ACT;**<br>3. **UNFAIR COMPETITION;**<br>4. **UNFAIR TRADE PRACTICES (Cal. Bus. and Prof. Code § 17200 et seq.);**<br>5. **IMPOSITION OF CONSTRUCTIVE TRUST;**<br>6. **DECLARATORY RELIEF;**<br>7. **BREACH OF FIDUCIARY DUTIES;**<br>8. **WASTE; AND**<br>9. **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br><br>**DEMAND FOR JURY TRIAL** |

S:\Soni_Law\Inderjit Puri\Inderjit v YB Admin Trust\Pldg\First Amended Complaint.wpd

Plaintiff, BIBIJI INDERJIT KAUR PURI ("Plaintiff" or "BIBIJI") hereby files this Complaint for federal and common law trademark infringement of the "YOGI," "YOGI TEA" and "PEACE CEREAL" trademarks, violation of Lanham Act §43(a), unfair competition, unfair trade practices, constructive trust, for a judgment that Defendant, YOGI BHAJAN ADMINISTRATIVE TRUST ("ADMIN TRUST"), does not own and has no right to use or license the "YOGI," "YOGI TEA," "PEACE CEREAL" or any other related or confusingly similar trademarks, and that the Trustees of the ADMIN TRUST have committed waste as follows:

### Jurisdiction and Venue

1.     The Court has subject matter jurisdiction over the claims herein pursuant to 15 U.S.C. §1121, and 28 U.S.C. §1338(a), in that all federal counts arise under the Trademark Laws of the United States, 15 U.S.C. §1051 *et seq.* and under 28 U.S.C.A. § 2201.  This Court has subject matter jurisdiction over the state law counts under 28 U.S.C. §§ 1338(b) and 1367(a) for state law claims that arise from the same facts and circumstances as the federal claims upon which original jurisdiction is based.

2.     Plaintiffs are informed and believe and thereon allege that venue is also proper in this Court under 28 U.S.C. §1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

### The Parties

3.     Plaintiff BIBIJI INDERJIT KAUR PURI ("Plaintiff" or "BIBIJI") is an individual residing in Los Angeles, California.

4.     Defendant YOGI BHAJAN ADMINISTRATIVE TRUST ("Defendant" or "ADMIN TRUST") is a testamentary trust formed in the State of New Mexico for the benefit of certain staff employees of Yogi Bhajan but with its principal place of business in Los Angeles, California.

5.     Defendant SHAKTI PARWHA KAUR KHALSA ("SHAKTI"), is a Trustee, appointed by Yogi Bhajan to administer the ADMIN TRUST.  SHAKTI is a resident of Los Angeles, California.

6.     Defendant EK ONG KAR KAUR KHALSA ("EK ONG"), is a Trustee, appointed by Yogi Bhajan to administer the ADMIN TRUST.  EK ONG is a resident of Los Angeles, California.

7.     Defendants, DOES 1 through 10, inclusive, are sued herein under fictitious names.  Their true names and capacities are unknown to Plaintiffs.  Plaintiffs will amend this Complaint when their true names and capacities are ascertained.  Plaintiffs are informed and believe and thereon allege that each of the fictitiously named Defendant are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages as herein alleged were proximately caused by each such Defendant.

8.     Plaintiffs are informed and believe and on that basis allege, that at all times herein mentioned, all Defendants herein, whether named or fictitiously designated (hereinafter collectively referred to as "Defendants"), were the agents, servants, employees, joint venturers, and/or the alter egos of the remaining Defendants, and the acts of each Defendant were within the course and scope of their agency, service, employment, and with permission, consent, and ratification of each other Defendant.

**Factual Background**

**Yogi Bhajan**

9.     Yogi Bhajan was a charismatic spiritual leader and successful entrepreneur who introduced Kundalini Yoga and Sikhism to the United States.  He was born Harbhajan Singh in what is now Pakistan to a family of healers and community leaders.  He studied comparative religion and Vedic philosophy as an undergraduate and went on to receive his Masters in Economics with honors from Punjab University.  He also earned a Ph.D. in communications psychology from the University of Humanistic Studies in San Francisco.

10.    Yogi Bhajan was a Master of Kundalini Yoga by the age of 16.  In the late 1960s, he immigrated from India to Canada, and then to the United States, in order to realize his vision of bringing Kundalini Yoga to the West.  He began by teaching workshops, sharing the ancient wisdom of Ayurveda and healthy living that he learned in India.  Ayurveda is a

system of traditional medicine native to India, which focuses on the use of natural herbs, massage and yoga for healing and healthy living.

11.     In response to the drug culture of the 60s, Yogi reached out to youth and taught them the peaceful, inner euphoria they could get naturally from Kundalini Yoga. As a result, young people began flocking to his classes, arriving in busloads. Yogi Bhajan created a family, known as 3HO (Healthy, Happy, Holy Organization) and soon 3HO teaching centers began springing up throughout the United States and across the world, growing to over 300 centers in 35 countries. 3HO was founded on Yogi Bhajan's premise that every human possessed the birthright to be healthy, happy and holy.

12.     Yogi Bhajan grew to be internationally known as a religious, community and business leader with a distinguished reputation as a man of peace, world-vision, wisdom, and compassion. In 1971, he was designated the Siri Singh Sahib, or the Sikh leader in the Western Hemisphere. As the Siri Singh Sahib, he discussed inter-religious dialogue with Pope John Paul II and also worked side-by-side with the Archbishop of Canterbury and the Dalai Lama to foster world peace.

13.     Yogi Bhajan founded International Peace Prayer Day in 1986 as a way for people of different faiths to come together and create a common prayer for peace. His belief was that peace in the world could only be attained through people finding peace and harmony within their own lives, in their own homes and relationships.

14.     Yogi Bhajan wrote and published over 30 books on topics ranging from consciousness and spirituality to communication and psychology. He also founded several companies to manufacture and distribute natural products based on his teachings. Yogi Bhajan and his teachings have received extensive media coverage and are well known throughout the United States and the world.

15.     Yogi Bhajan passed away on October 6, 2004 at the age of 75.

///

///

## The Trademarks

16.     Beginning around 1969, after his classes, Yogi Bhajan would serve his students a special spiced tea he developed based upon the healing principles of Ayurveda, which he and his students began affectionately calling "Yogi Tea," referring to the tea that he, Yogi Bhajan, had developed.

17.     In or around 1984, with Yogi Bhajan's encouragement and assistance, some of his students formed a company to market and sell this "Yogi Tea." Yogi Bhajan granted the company, which was originally known as the Yogi Tea Company, a license to use his name and likeness and the trademark "Yogi Tea" to market teas based on formulas developed by Yogi Bhajan.

18.     Since the beginning and as recently as 2009, at Yogi Bhajan's direction and insistence, Golden Temple of Oregon, LLC ("GTO"), the successor-in-interest to Yogi Tea Company, started using Yogi Bhajan's image on its packaging, its websites and sales and marketing materials for a line of cereals under the "PEACE CEREAL" trademark. At Yogi Bhajan's direction, 10% of the profits from sales of PEACE CEREAL branded products were donated to support the International Prayer for Peace Day founded by Yogi Bhajan.

19.     GTO as successor to the Yogi Tea Company, also licensed the right to use Yogi Bhajan's name and likeness, including any trademark, service mark, logo, insignia, seal, design, or any other symbol or device used by or identifying Yogi Bhajan in connection with the sales of goods, including teas and food products, all of which were referred to as the "HSKY Marks." The License was renewed and extended repeatedly until it was replaced with a new license in 2004 with a term of 75 years providing the same scope of license to use the HSKY Marks.

20.     Since at least as early as 1998, GTO used Yogi Bhajan's image on its packaging, its websites and sales and marketing materials heralding that the "Yogi behind Yogi Tea is Yogi Bhajan...."

21.     At the end of 2008, GTO announced it had ceased use of Yogi Bhajan's name and likeness. GTO claimed to have terminated the license and ceased paying royalties due

1    under the License.  Consequently, GTO no longer had any right to use the HSKY Marks.

2           22.    In fact, GTO continued to use the "Yogi Tea" Licensed Mark, and still uses it

3    today without authorization from BIBIJI.

4           23.    GTO also expanded the use of the YOGI mark to cereals without authority or

5    compensation to the owners of the mark.

6           24.    In 2010, BIBIJI sued GTO for trademark infringement and to reclaim

7    ownership and trademark registrations GTO had obtained in the YOGI and YOGI TEA

8    trademarks.  The action was referred to Arbitration and a panel of three (3) Arbitrators issued

9    their Findings of Fact and Notice of Award on July 29, 2011 (the "Arbitration Decision"),

10   which confirmed BIBIJI's rights to the YOGI and YOGI TEA trademarks and that GTO had

11   no rights in or to the YOGI marks.  The Arbitration Decision was based on interpretation of

12   the License Agreement and evidence establishing that Yogi Bhajan had used the YOGI

13   marks and that those marks identified him.  An Arbitration Award was issued on November

14   10, 2011.

15          25.    The analysis supporting the Arbitrators' conclusions about the YOGI marks

16   applies equally to the PEACE CEREAL trademark and all of the other HSKY Marks.  BIBIJI

17   therefore has the same ownership interest in the PEACE CEREAL trademark and other

18   HSKY Marks as in the YOGI marks.

19          26.    Upon issuance of the Arbitration Decision, BIBIJI and the Trustees of the

20   ADMIN TRUST engaged in negotiations with GTO for a new license.  GTO refused to pay

21   fair market license rates and insisted on a worldwide perpetual license for all food and

22   beverage products despite never having been so broadly licensed and without any plans for

23   exploitation of such products or a outright purchase of the Marks.  GTO broke off all

24   negotiations with BIBIJI.

25          27.    BIBIJI has secured a new licensee to exploit the HSKY Marks at rates

26   significantly above what GTO was paying and what GTO was willing to pay to secure a

27   continued right to use the trademarks.

28          28.    The Trustees of the ADMIN TRUST entered into an Interim License with GTO

FIRST AMENDED
COMPLAINT

at below market rates for "any and all food and beverage products" with a further agreement to enter into an agreement to sell the Licensed Trademarks to GTO without consulting with BIBIJI or the Designated Income or Residuary Beneficiaries of Staff Endowment Trust.

## Ownership of the Trademarks

29.    Yogi Bhajan and his wife, Plaintiff BIBIJI, created a joint living trust which thereafter owned and controlled the trademark rights and other intellectual property of Yogi Bhajan. After Yogi Bhajan's death, this trust was terminated and BIBIJI was to receive her share of the Community Property Estate. Instead, the Successor Trustees of the Living Trust distributed to BIBIJI only fifty percent (50%) interest in and to the trust assets, including the trademarks and other intellectual property rights related to Yogi Bhajan. Yogi Bhajan's share of the Community Property Estate, other than specific gifts, were to be distributed to a member-administered limited liability company to be called "Staff Endowment, LLC," which was to provide an income life estate for the benefit of designated staff members in designated percentages. Upon the death of each life income beneficiary their pro rata income was to vest in the Legacy of Yogiji Foundation ("LYF"). Upon the death of the last life beneficiary the Staff Endowment LLC was to be terminated and all assets distributed to LYF.

30.    The Trustees of the ADMIN TRUST did not form Staff Endowment, LLC, as directed by Yogi Bhajan, and have in fact taken no steps nor made any effort whatsoever to do so.

31.    Ownership of the undistributed 50% interest in the JOINT TRUST assets is disputed by BIBIJI, who claims entitlement at least some of such assets as a result of certain discretionary expenditures of the community property estate by Yogi Bhajan without BIBIJI's knowledge or consent.

## The Ultra Vires Acts of the ADMIN TRUST

32.    Subsequent to the ruling by the Arbitrators the Trustees of the ADMIN TRUST entered into negotiations with GTO to license the YOGI, YOGI TEA, PEACE CEREAL and

1  other HSKY Marks.  However, the ADMIN TRUST has no ownership rights in or to those

2  marks and is not entitled to exercise ownership powers over the undistributed assets.  The

3  Trustees were charged with the ministerial function of investigating what Yogi Bhajan's

4  share of the Community Property Estate comprised and delivering legal title to such assets to

5  Staff Endowment, LLC.

6      33.    On or about October 7, 2011, the Trustees of the ADMIN TRUST executed an

7  Interim License Agreement with GTO for the YOGI and YOGI TEA trademarks.  A copy of

8  the Interim License Agreement is attached hereto as **Exhibit A.**  Execution of the Interim

9  License Agreement was beyond the authority of the Trustees.

10     34.    The Interim License Agreement gave GTO a license to use the YOGI and

11  YOGI TEA marks at a royalty rate well below the rate those marks would command on the

12  open market, and well below the royalty rate previously offered to BIBIJI for licensing the

13  YOGI and YOGI TEA marks by GTO and others.  By virtue of the Interim License, the

14  Trustees also committed to negotiating an agreement to sell the trademarks.

15

16                          **COUNT I**
                  **FEDERAL STATUTORY AND**
17              **COMMON LAW TRADEMARK INFRINGEMENT**
                            **OF THE**
18     **YOGI, YOGI TEA, PEACE CEREAL AND OTHER HSKY TRADEMARKS**

19     35.    Plaintiff hereby realleges, as if fully set forth, the allegations of paragraphs 1

20  through 34, inclusive.

21     36.    BIBIJI is an owner of the YOGI, YOGI TEA and PEACE CEREAL

22  trademarks, in addition to the other HSKY Marks, and will own the trademark registrations

23  for the YOGI and YOGI TEA marks upon assignment thereof by GTO.

24     37.    The ADMIN TRUST does not own any rights in or to the YOGI, YOGI TEA

25  and PEACE CEREAL trademarks, or to the other HSKY Marks.

26     38.    The ADMIN TRUST has purported to license the YOGI, YOGI TEA, PEACE

27  CEREAL and other HSKY Marks to GTO.  GTO, with actual knowledge of Plaintiff's rights,

28  has indicated its intent to continue to use the YOGI and YOGI TEA trademarks and trade

---

FIRST AMENDED
COMPLAINT

1  dress beyond the period allowed by the Arbitration Panel to promote and advertise

2  Defendants' Goods which are not authorized, approved, produced or sponsored by BIBIJI or

3  any other rightful owner of the YOGI and YOGI TEA marks.  Defendants' unauthorized,

4  unlawful use is likely to cause confusion, deception, or mistake as to the source, association,

5  affiliation or sponsorship of Defendants' Goods.

6      39.    The purported Interim License Agreement is ineffective to grant GTO any

7  rights to use the YOGI, YOGI TEA, PEACE CEREAL or other HSKY Marks.  The JOINT

8  TRUST and the letters of direction issued by Yogi Bhajan pursuant to the JOINT TRUST

9  before his death make clear that Yogi Bhajan's share of any assets in the JOINT TRUST are

10  to be distributed to the Staff Endowment, LLC, to distribute income to its members during

11  their lives and to vest any remainder in LYF.  Moreover, Yogi Bhajan's share in the

12  Community Property Estate has not yet been determined since BIBIJI is entitled to

13  reallocation of the Community Property Estate assets to account for community assets

14  disposed of by Yogi Bhajan prior to his death without her knowledge or consent.

15  Consequently, there is no basis for the Trustees of the ADMIN TRUST to claim any rights to

16  the trademarks, much less an equal undivided share.

17      40.    As a direct and proximate result of Defendants' unlawful activities, Plaintiffs

18  have suffered serious damage and unless Defendants are restrained from continuing their

19  wrongful acts, the damage to Plaintiff, which is irreparable, will increase.

20      41.    The aforesaid acts of Defendants constitute willful trademark infringement in

21  violation of Plaintiff's rights at common law and under the Federal Lanham Act.

22      42.    Plaintiff has no adequate remedy at law.

23

24                          **COUNT II**

25      **VIOLATION OF SECTION 43(a) OF THE LANHAM ACT**

26      43.    Plaintiff hereby realleges, as if fully set forth, the allegations of paragraphs 1

27  through 42, inclusive.

28      44.    Defendants' acts alleged herein constitute an unauthorized use of BIBIJI's

FIRST AMENDED
COMPLAINT

trademarks. All uses by GTO are attributable to Defendants since they are made pursuant to the Interim License Agreement and Defendants are liable for all such acts of direct infringement.

45.    Defendants' acts of authorizing use of BIBIJI's trademarks are inducing and contributing to false designations and descriptions as to the origin, quality, association, affiliation, sponsorship and characteristics of goods to be sold under the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks.

46.    Upon information and belief, Defendants acted recklessly, and with actual knowledge of Plaintiff's trademark rights, after warning, and with knowledge that Defendants' acts constitute a false designation and description of the origin, quality, association, affiliation, sponsorship and characteristics of the goods bearing the aforementioned marks as alleged above.

47.    Defendants' acts constitute false designations and/or descriptions of origin, false association, affiliation and/or sponsorship in violation of Plaintiffs' rights under Section 1125(a) of the Trademark Act of 1946 (Section 43(a) of the Lanham Act; 15 U.S.C. § 1051, et. seq.)

48.    Upon information and belief, Defendants' acts are destroying the exclusive association of the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks with their rightful owners, and has harmed Plaintiff thereby, including, but not limited to, the loss of royalty income from the unlawful licensing of those marks.

49.    BIBIJI has been suffering, and will continue to suffer, actual injury to her economic interests as a result of Defendant's acts.

50.    Unless Defendants are immediately restrained from continuing their wrongful acts, the damage to Plaintiff, which is irreparable, will increase.

51.    Plaintiff has no adequate remedy at law.

///
///

## COUNT III
## UNFAIR COMPETITION

52.    Plaintiff repeats, as if fully set forth herein, the allegations set forth in paragraphs 1 through 51.

53.    Upon information and belief, Defendants have committed acts of unfair competition and have unlawfully traded upon the valuable goodwill and reputation of the YOGI, YOGI TEA PEACE CEREAL and other HSKY Marks in violation of the common law of the State of California, in that Defendants are claiming a right to use those marks on goods when, in fact, Defendants have no rights to the those marks as the ADMIN TRUST had no ownership rights or any rights to license the marks.  Defendants are attempting to appropriate the marks for their own use to the exclusion of the rightful owners and seek to use the marks without Plaintiff's consent.

54.    Defendants are creating confusion in the marketplace as to the ownership, association, affiliation, and sponsorship of the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks by claiming a right to use those marks.  Upon information and belief, Defendants have been unjustly enriched by their acts of unfair competition to the exclusion of Plaintiff.

55.    Upon information and belief, Defendants have intentionally misappropriated the commercial value of the aforementioned marks, have unlawfully acted to damage the source-identifying quality of said marks, and have created circumstances which adversely affect the value of the goodwill and reputation associated with those marks.

56.    Plaintiff is informed and believes, and thereupon alleges, that the acts alleged above were willful, fraudulent, malicious and oppressive and were undertaken with the intent to harm BIBIJI, or were done with reckless disregard of Plaintiff's rights, and justify the awarding of punitive damages so as to set an example and to deter others from engaging in such conduct.

57.    Plaintiff has suffered, is suffering, and will continue to suffer irreparable injury for which Plaintiff has no adequate remedy at law.

FIRST AMENDED
COMPLAINT

## COUNT IV
## UNFAIR TRADE PRACTICES
### (Cal. Bus. and Prof. Code §17200 et seq.)

58.     Plaintiff repeats, as if fully set forth herein, the allegations set forth in paragraphs 1 through 57.

59.     Upon information and belief, Defendants have engaged in acts of statutory unfair competition as defined in California Business and Professions Code Section 17200, including unfair and fraudulent business practices.

60.     Plaintiff is entitled to an injunction under California Business and Professions Code Section 17203 enjoining Defendants from engaging in its unlawful acts, and restoration of any money or property which Defendants acquired through their acts of unfair competition.

61.     BIBIJI and the public have no adequate remedy at law and therefore ask that Defendants be enjoined from their unlawful use of the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks.

## COUNT V
## IMPOSITION OF CONSTRUCTIVE TRUST
### (California Civil Code § 2224)

62.     Plaintiff hereby realleges, as if fully set forth, the allegations of paragraphs 1 through 61, inclusive.

63.     By reason of the wrongful acts of Defendants as set forth above, Defendants are involuntary trustees of all rights and goodwill associated with the YOGI, YOGI TEA, PEACE CEREAL and other HSKY marks, together with all income or funds received by Defendants from their wrongful acts.

64.     Defendants should be required to turn over all such income or funds unlawfully obtained.

///

///

## COUNT VI
## DECLARATORY RELIEF

65.     Plaintiff hereby realleges, as if fully set forth, the allegations of paragraphs 1 through 64, inclusive.

66.     An actual controversy exists between BIBIJI and Defendants in that Defendants contend that the ADMIN TRUST has the right to use and to license the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks in relation to goods, whereas BIBIJI contends that the ADMIN TRUST has no ownership rights in those marks, but that such rights are in BIBIJI, that no lawful rights have been granted to GTO in the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks by any true owner of such marks, and that GTO's continued use of those marks is unlawful.

67.     A justiciable controversy exists concerning whether Defendants have any ownership interest in or the right to license or use the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks.

68.     Plaintiffs request that the Court issue a judgment declaring that: (1) the ADMIN TRUST has no ownership rights in the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks and has no right to license those marks; (2) that the ADMIN TRUST has no right to license or use the YOGI, YOGI TEA, PEACE CEREAL or other HSKY Marks; and (3) that Defendants have no right to advertise, offer to sell or sell any products or services using the YOGI, YOGI TEA, PEACE CEREAL or other HSKY Marks, or any mark confusingly similar thereto.

## COUNT VII
## BREACH OF FIDUCIARY DUTY

69.     Plaintiff repeats, as if fully set forth herein, the allegations set forth in paragraphs 1 through 68.

70.     SHAKTI and EK ONG owe a fiduciary duty to BIBIJI as Successor Trustees of the Living Trust to the extent that community assets belonging to her have not been

1 | distributed to her.

2 |     71.    SHAKTI and EK ONG had an obligation under the terms of the Living Trust to
3 | identify and transfer title to BIBIJI of her share of the community property assets.

4 |     72.    SHAKTI and EK ONG owed an obligation to the BIBIJI not to commit waste
5 | of the assets held for BIBIJI's benefit.

6 |     73.    As set forth above, SHAKTI and EK ONG made no effort to identify
7 | community assets belonging to BIBIJI or evaluate whether and how much of the Community
8 | Property Estate had to be reallocated to account for dispositions of community assets by Yogi
9 | Bhajan.

10 |     74.    Moreover, rather than allow BIBIJI to secure the best royalty rate for a license
11 | of the YOGI, YOGI TEA and other HSKY marks, SHATI and EK ONG entered into
12 | negotiations with GTO, who had just been found to have wrongfully usurped those marks for
13 | itself and wrongfully registered those marks with the USPTO, and entered into an Interim
14 | License Agreement with GTO at a royalty rate well below the market rate and below the
15 | royalty rate already offered to BIBIJI for a license of the YOGI, YOGI TEA and other HSKY
16 | trademarks.

17 |     75.    SHAKTI and EK ONG had no lawful right to enter into negotiation with GTO
18 | or grant a license to GTO for use of the YOGI, YOGI TEA, PEACE CEREAL or other
19 | HSKY Marks.

20 |     76.    SHAKTI and EK ONG breached their duty to BIBIJI by: (a) failing to identify
21 | and deliver to BIBIJI her share of the Living Trust Assets; (b) agreeing to sell Trust assets to
22 | the detriment of BIBIJI and the INCOME BENEFICIARIES; (c) granting a license to GTO
23 | at rates well below the fair market value and for territories and products not produced by
24 | GTO; and (d) expending Trust assets in a frivolous suit against BIBIJI.

25 |     77.    BIBIJI has suffered damage by SHAKTI's and EK ONG's breach of fiduciary
26 | duty in an amount unknown at this time, subject to proof at trial.

27 |     78.    Plaintiff is informed and believes, and thereupon alleges, that the acts alleged
28 | above were willful, fraudulent, malicious and oppressive and were undertaken with the intent

FIRST AMENDED
COMPLAINT

S:\Soni_Law\Inderjit Puri\Inderjit v YB Admin Trust\Pldg\First Amended Complaint.wpd    14

to harm BIBIJI, or were done with reckless disregard of Plaintiff's rights, and justify the awarding of punitive damages so as to set an example and to deter others from engaging in such conduct.

## COUNT VIII
## WASTE

79.    Plaintiff repeats, as if fully set forth herein, the allegations set forth in paragraphs 1 through 78.

80.    SHAKTI and EK ONG, both of whom are Successor Trustees of the Living Trust, were obligated not to take any actions which would reduce the value of the assets in their trust for the benefit of BIBIJI and the INCOME BENEFICIARIES of the trust.

81.    SHAKTI's and EK ONG's duties to Bibiji have not been discharged because they have failed to investigate Yogi Bhajan's discretionary dispositions of community assets and deliver unto BIBIJI all of the assets to which she is entitled under the terms of the Living Trust. In their capacity as trustees of the ADMIN TRUST, SHAKTI and EK ONG continue to hold on to assets which belong to BIBIJI.

82.    SHAKTI and EK ONG owed BIBIJI and the Beneficiaries of the Staff Endowment Trust a duty to not to commit waste, lessen the value or destroy the assets under their care. Rather, SHAKTI and EK ONG entered into a license agreement with GTO for use of the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks at below market royalty rate for all food and beverage products worldwide and perpetually. This constitutes a waste of trust assets. They also committed to negotiating in good faith to sell the trademarks to GTO without consulting or obtaining approval from the Beneficiaries and BIBIJI, knowing full well that neither BIBIJI nor the Beneficiaries were willing to consider a sale of the trademarks.

83.    SHAKTI and EK ONG are liable to BIBIJI for the difference between the market royalty rate that BIBIJI was able to secure from other licensees for use of the YOGI, YOGI TEA and other HSKY marks and the rate paid by GTO. SHAKTI and EK ONG are

FIRST AMENDED
COMPLAINT

also liable to BIBIJI for damage to the value of the trademarks caused by the license granted to GTO.

**COUNT IX**
**INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

84.     Plaintiff repeats, as if fully set forth herein, the allegations set forth in paragraphs 1 through 83.

85.     SHAKTI and EK ONG were aware that BIBIJI was negotiating with prospective licensees of the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks and that those prospective licensees had offered to pay a royalty well above the royalty GTO was offering to pay to license those marks.

86.     SHAKTI and EK ONG knew or should have known that the ADMIN TRUST had no rights in YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks and that only BIBIJI had the right to license the use of those marks.

87.     Despite their knowledge, SHAKTI and EK ONG entered into negotiations with GTO and executed the Interim License Agreement with GTO which purports to authorize GTO to use the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks on "any and all food and beverage products."

88.     The execution of the Interim License Agreement with GTO interfered with BIBIJI's ongoing negotiations to license the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks and prevented BIBIJI from consummating any license agreement for the use of those marks.

89.     The acts of SHAKTI and EK ONG are not privileged, because they knew or should have know that neither they nor the ADMIN TRUST had any rights in the YOGI, YOGI TEA, PEACE CEREAL and other HSKY Marks and that in any event they were breaching their fiduciary duty to BIBIJI by negotiating and executing the Interim License Agreement with GTO.

90.     As a direct and proximate result of SHAKTI and EK ONG's acts of

1  interference, BIBIJI has suffered damages in an amount subject to proof at trial.

2        91.    The acts of SHAKTI and EK ONG were willful, fraudulent, oppresive and

3  malicious, and were deliberately designed to injure BIBIJI.  Therefore, BIBIJI is entitled to

4  an award of punitive damages for the sake of example and by way of punishing the

5  Defendants for their conduct.

6

7  **PRAYER FOR RELIEF**

8        Wherefore, Plaintiffs pray:

9  1.     That Defendants be found liable to BIBIJI for Defendants' infringement of the YOGI,
10        YOGI TEA, PEACE and other HSKY Marks.

11 2.     That this Court issue an injunction prohibiting Defendants, their agents, servants,
12        employees and all persons in active concert or privity or in participation with
13        Defendants, from infringing the YOGI, YOGI TEA and other HSKY trademarks by
14        their use or use of any confusingly similar names, marks or designations.

15 3.     That this Court award Plaintiffs all damages they have suffered as a result of
16        Defendant's infringements and acts of unfair competition.

17 4.     That this Court award Plaintiffs all profits Defendants have obtained through their
18        infringements and acts of unfair competition.

19 5.     That this Court award Plaintiffs up to treble damages against Defendants in view of
20        their willful conduct.

21 6.     That this Court award punitive and exemplary damages against Defendants and in
22        favor of Plaintiffs.

23 7.     That Plaintiffs be awarded an amount to be determined for corrective advertising to
24        allow for the recapture of the source-identifying function of the trademarks and trade
25        dress.

26 8.     That Defendants, their agents, servants, employees and all other persons in active
27        concert or privity or in participation with them, be enjoined from making and
28        disseminating false and misleading statements regarding the ownership, affiliation,

1  association, sponsorship of the YOGI and YOGI TEA marks or otherwise committing

2  any acts of unfair competition.

3  9.  Directing Defendants to pay to Plaintiffs all gains, profits, and advantages derived by

4  Defendants from the aforesaid unfair trade practices, unfair competition and violations

5  of Cal Civil Code § 2224.

6  10.  Directing restitutionary damages for Defendants' violations of Cal. Bus. & Prof. Code

7  §17200 *et. seq.*

8  11.  A declaration that: (1) the ADMIN TRUST has no ownership rights in the YOGI,

9  YOGI TEA and other HSKY marks and has no right to license or use the YOGI,

10  YOGI TEA and other HSKY marks; (2) that ADMIN TRUST has no right to use the

11  YOGI, YOGI TEA and other HSKY marks; and (3) that Defendants have no right to

12  advertise, offer to sell or sell any products or services using the YOGI, YOGI TEA

13  and other HSKY marks , or any mark confusingly similar thereto.

14  12.  That SHAKTI and EK ONG be removed as Trustees of the ADMIN TRUST.

15  13.  An award of compensatory damages against SHAKTI and EK ONG for their breach

16  of fiduciary duty.

17  14.  That SHAKTI and EK ONG pay the difference between the market royalty rate for

18  use of the YOGI and YOGI TEA marks and the rate paid by GTO.

19  15.  That SHAKTI and EK ONG pay to Bibiji for damage to the value of the trademarks

20  caused by the license granted to GTO.

21  16.  That SHAKTI and EK ONG pay to Bibiji damages suffered because of their

22  interference with Bibiji's economic interests.

23  17.  That costs of this action be awarded Plaintiffs.

24  18.  That Plaintiffs be awarded both prejudgment and post-judgment interest on each and

25  every damage award.

26  19.  That this Court determine that this is an exceptional case and that Plaintiffs be

27  awarded reasonable attorney fees.

28  20.  That this Court determine that Defendants have acted wantonly, recklessly,

1  maliciously, oppressively or with mendacious contempt for the rights of Plaintiffs and

2  that Plaintiffs are entitled to punitive damages.

3  21.  That this Court grant such other and further relief as it shall deem just and proper.

4

5  Dated: November 21, 2011                    THE SONI LAW FIRM

6

7                                        By:

8                                              Surjit P. Soni
                                               M. Danton Richardson
9                                              Leo E. Lundberg, Jr.
                                               Attorneys for Plaintiffs,
10                                             BIBIJI INDERJIT KAUR PURI

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED
COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff BIBIJI hereby demands a jury trial in the above-entitled action.

Dated:   November 21, 2011                    THE SONI LAW FIRM

By: _____
Surjit P. Soni
M. Danton Richardson
Leo E. Lundberg, Jr.
Attorneys for Plaintiff,
BIBIJI INDERJIT KAUR PURI

FIRST AMENDED
COMPLAINT

*EXECUTION COPY*

## GOLDEN TEMPLE – TRUST INTERIM LICENSE AGREEMENT

This Interim License Agreement (the "Agreement") is made as of October 1, 2011, (the "Effective Date") by and between Golden Temple of Oregon LLC, an Oregon limited liability company and its affiliates, with principal offices located at 121 SW Morrison, Suite 925, Portland OR 97204-3139 ("GTO"), and the Yogi Bhajan Administrative Trust, with principal offices located at 1649 S. Robertson Blvd., P.O. Box 351149, Los Angeles, CA 90035 ("The Trust"), as follows:  The parties desire to enter into this Agreement which shall remain in effect until either (a) the execution of a formal, written Purchase, Sale and Co-existence Agreement, or (b) this Agreement is terminated (which may be terminated by either party upon 180-days prior written notice to the other in accordance with Section 11).

1.    Licensing.

A.    The Trust, its successors and assigns hereby grant to GTO, its affiliates and applicable licensees, the exclusive right and license (with full rights to sublicense through multiple tiers) to make, use, sell, offer for sale and import, copy, distribute, perform, display, and to create derivative works therefrom, to appropriate, and generally to exploit, throughout the world, for any and all food and beverage products, all of The Trust's right, title, and interest (to the extent it has such right, title and interest) in and to three categories of intellectual property:

(i) YOGI, YOGI TEA trade names, trademarks, and all related intellectual properties, (including without limitation those covered or encompassed by the injunctive relief ordered by the arbitration panel, dated Aug. 2, 2011, in the proceeding captioned as *Inderjit Kaur Puri v. Golden Temple of Oregon, LLC, Arbitration Service of Portland Case No 100624*, ("Arbitration Order") and, separately the associated trade dress, copyrights, packaging designs and recipes therefor);

(ii) other trademarks and similarly related intellectual properties (including without limitation the associated trade dress, copyrights, packaging designs and recipes therefor) used in commerce by GTO prior to the Effective Date, to which the Trust may now have, has had or will have an ownership claim or interest, and/or trademarks and similarly related intellectual properties (including without limitation the associated trade dress, copyrights, packaging designs and recipes therefor) which GTO may desire for the purpose of defending third party claims against GTO, its customers, assignees and/or licensees (e.g., Hearthside) with respect to, including without limitation, PEACE, GOLDEN TEMPLE, and HOMEFARM; but excluding the names Yogi Bhajan and Harbhajan Singh Khalsa Yogiji, facsimiles of the signature thereof,  and any likeness of Yogi Bhajan or Harbhajan Singh Khalsa Yogiji whether or not used in commerce by GTO under any prior licensing agreement; and,

(iii) any and all items, product or flavor names, trademarks, trade dress, packaging, designs and recipes or formulations therefor listed in Exhibit 1.5 of that



EXHIBIT

A

certain 2004 License Agreement between GTO and the Harbhajan Singh Khalsa Yogiji and Inderjit Kaur Living Trust, dated both July 26, 2004 and October 1, 2004, (the "2004 License Agreement"), and any such intellectual properties which were or may have been the subject of similar prior agreements between GTO and the Trust, including without limitation any recipes that were owned or used by the Trust or any predecessor in interest and provided or licensed to GTO thereunder, excluding the names Yogi Bhajan and Harbhajan Singh Khalsa Yogiji, facsimiles of the signatures thereof, and any likeness of Yogi Bhajan or Harbhajan Singh Khalsa Yogiji whether or not used in commerce by GTO (the "Yogi Bhajan Names, Signature and Likeness") under any prior licensing agreement and any recipes contained in Yogi Bhajan's public teachings which were not used in trade by GTO prior to September 30, 2011,

(collectively, the "Licensed IP"); it being understood, however, that there exists uncertainty with respect to whether The Trust owns all or portions of the Licensed IP that the Licensed IP shall include that which is described in clauses (i), (ii) and (iii) immediately above, to the maximum extent permitted by law, and that no acceptance or exercise of the rights or licenses granted hereunder by The Trust to GTO is an admission by either party that The Trust owns such intellectual property or that GTO does not own such intellectual property.

B.      All rights not expressly granted or licensed by this Agreement are hereby reserved by the Trust.    The Trust currently owns and will continue to own an undivided fifty percent interest in the marks YOGI BHAJAN and, separately, the Yogi Bhajan Name, Signature, and Likeness. The Trust agrees not to use the Yogi Bhajan name or YOGI BHAJAN trademark to identify, market, sell, distribute, promote or advertise any food or beverage product, such as "Yogi Bhajan Orange Juice," but retains the full right to use the Yogi Bhajan Name, Signature and Likeness on any food or beverage product except tea and cereal; further provided, however, the Trust agrees not to use or license any confusingly similar variations of the trademarks YOGI and/or YOGI TEA to any competitor of GTO, and further agrees not to license the trademarks YOGI and/or YOGI TEA to any competitor in a manner that facilitates unfair competition whether against GTO, its customers, assignees and/or licensees (e.g., Hearthside).

C.      GTO, its successors and assigns may not use the Licensed IP for alcoholic beverages, tobacco products, meat, poultry, fish or eggs. The Trust, its successors and assigns may not use the YOGI and YOGI TEA marks, or the Yogi Bhajan Name, Signature, and Likeness on alcoholic beverages, tobacco products, meat, poultry, fish or eggs.

D.      If this Agreement is not terminated pursuant to Paragraph 11 by December 31, 2011, GTO agrees that on the first business day thereafter, it will offer substantially the same material terms and conditions of this agreement to Bibiji Inderjit Kaur Puri ("Bibiji") which will include a ten (10) day period within which to accept or reject the offer.

2

*EXECUTION COPY*

E.     Nothing in this agreement purports, or is intended, to affect Bibiji's co-ownership in any intellectual property. The Trust shall retain the ability to bring a claim or action for the Licensed IP described in paragraph A.(ii) above, but only to the extent such actions or claims are against third parties and do not arise from or relate to GTO or its affiliates, contractors, agents, representatives, customers, distributors, transferees or licensees (including without limitation Hearthside).

2.     Products, Product Formulation and Packaging. The Trust understands that GTO has been selling and will continue to sell and market its current line of tea products, formulations and certain packaging in connection with its tea products in association with the YOGI and YOGI TEA marks, which are part of The Licensed IP.

3.     Payments and Royalties.

A.     GTO shall pay The Trust $50,000 advance, credited against any amounts The Trust claims are (but which GTO does not admit are) owed by GTO to The Trust for back-royalties, which payment is intended to reduce royalties (if any) owed from the period January 1, 2009 through the Effective Date as calculated under the method determined by the arbitration panel in Bibiji Inderjit Kaur Puri v. Golden Temple of Oregon, LLC, Arbitration Service of Portland Case No. 100624, pursuant to the Arbitration Order, which shall be due and payable on October 14, 2011 (the "Back Royalties").

B.     The remainder of the Back Royalties shall be due and payable ten (10) business days after the earlier of:  (i) both parties execute a definitive, written and final Purchase, Sale and Coexistence Agreement, or (ii) if GTO terminates under Section 11 below, such remainder of the Back Royalties shall not be due and payable until ninety (90) days after the effective date of such termination; or, (iii) if The Trust terminates under Section 11 below, The Trust shall have the option of either GTO paying (a) one-half of the remainder of the Back Royalties due and payable ninety (90) days after effective date of such termination by The Trust, or (b) the remainder of the Back Royalties payable at the rate of $50,000 per month until fully paid.

C.     In exchange for the rights and licenses granted in Section 1.A. above, GTO shall, starting on the Effective Date, and continuing during the term of this Agreement (including any pro rata amounts for partial months), pay the Trust a royalty calculated based on the same formula utilized and applied under the Arbitration Order for all sales that trigger a royalty payment by GTO or its affiliates, including for these purposes sales outside the United States by GTO's affiliates. GTO shall pay such royalty to the Trust in arrears, in a manner to be mutually agreed by the parties (whether by check or wire transfer as the parties may mutually agree). Notwithstanding the forgoing, if the Purchase, Sale and Coexistence Agreement contemplated by Section 12 below is executed by both parties on or before October. 14, 2011, in lieu of the royalty contemplated in the first two sentences of this Section 3.C, GTO shall pay a fixed amount of $50,000.

3

4.   Confidentiality.

To the extent possible, given the ongoing litigation and various proceedings in Oregon and New Mexico, each party shall endeavor to protect the other's disclosed confidential information, it being recognized that the parties may need to disclose this Agreement in connection with certain pending litigation. The parties shall exchange all confidential information necessary to facilitate the consummation of a formal written agreement based on the terms and conditions embodied in this Agreement.

5.   Governing Law; Venue.

This Agreement shall be governed by, construed and enforced in accordance with the internal laws of the State of Oregon, without giving effect to principles and provisions thereof relating to conflict or choice of laws irrespective of the fact that any one of the parties is now or may become a resident of a different state. Venue for any action under this Agreement shall lie only in Multnomah County, Oregon. The parties hereby consent to personal jurisdiction over them by the state and federal courts within Multnomah County, Oregon. The parties waive all objection and challenge to such venue and personal jurisdiction.

6.   Notices.

Any notice, demand, or communication required or permitted to be given by any provision of this Agreement shall be in writing and sent by telephone facsimile transmission, certified or registered mail with return receipt requested, or express courier or reputable delivery service and addressed to the addresses shown in the first paragraph of this Agreement, or to such other address as such party may from time to time specify by notice to the other parties. Any such notice shall be deemed to be delivered, given, and received for all purposes as of the date so delivered.

7.   Severability.

If any part of this Agreement is determined to be wholly or partially unenforceable, the balance of the Agreement will not be affected and shall remain enforceable to the maximum extent permitted by law.

8.   Entire Agreement; Termination of Prior Tolling Agreement.

The parties acknowledge and agree that any and all prior agreements between the parties whether written or oral regarding its subject matter are hereby superseded by this Agreement and are forever terminated; provided, however, the parties agree that, during the term of this Agreement, that certain Tolling Agreement, by and between the parties, dated February 1, 2010, shall remain valid and enforceable, and shall terminate only on the effective date of any

4

termination of this Agreement because the parties executed the definitive, final Purchase, Sale and Coexistence agreement.

      9.    Merger.

    This letter is intended to reflect the parties' entire agreement and understanding of material matters pertaining to the arrangement. This letter agreement is legally binding and enforceable and will remain in effect until superseded by the more formal written agreement contemplated hereunder.

      10.    Binding Effect; Non-Waiver Of Breach.

    This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors, heirs, transferees, licensees and assigns, whether by merger or consolidation or otherwise, and upon and to the benefit of their respective present and future affiliated and subsidiary companies and licensees. The failure of any party hereto to insist upon strict performance of any of the covenants and agreements herein contained, or to exercise any right or remedy herein conferred, in any one or more instances, shall not be construed to be a waiver or relinquishment of any such right or remedy, or of any other covenants or agreements, but the same shall be and remain in full force and effect.

      11.    Term and Termination.   This Agreement shall begin on the Effective Date and shall continue until the earlier of (a) both parties execute the definitive, written and final Purchase, Sale and Coexistence Agreement contemplated by Section 12 below, or (b) 180-days' prior written notice from one party to the other.

      12.    Purchase, Sale and Coexistence Agreement.   The parties agree to cooperate and work together in good faith to expedite the negotiation and execution of a definitive, written and final Purchase, Sale and Coexistence Agreement by October 14, 2011.

      13.    Indemnification.   During the term of this Agreement, GTO shall defend, indemnify and hold The Trust harmless from and against any damages (including defense costs) resulting from an action or claim by Bibiji to the extent caused by the Trust entering into this Agreement with GTO, so long as counsel for The Trust cooperates with GTO's counsel for any such litigation.

Authorized signers for the parties have executed this agreement as of the dates below their respective signatures.


GOLDEN TEMPLE OF OREGON LLC

By: _____

Its Manager, Golden Temple Management, LLC, acting through

Karam Singh Khalsa, Manager.

Date: Oct. 7, 2011



AGREED AND ACCEPTED BY:


Trustees of the Harbhajan Singh Khalsa Yogiji Yogi Bhajan Administrative Trust Administrative Trust, under trust agreement dated February 21, 1987 and as later amended


By: _____

Its: _____

Date: October 7, 2011



By: _____

Its: _____

Date: October 7, 2011

6

Authorized signers for the parties have executed this agreement as of the dates below their respective signatures.


GOLDEN TEMPLE OF OREGON LLC

By: _____

Its Manager, Golden Temple Management, LLC, acting through

Karam Singh Khalsa, Manager.

Date:  Oct. 7,  2011



AGREED AND ACCEPTED BY:


Trustees of the Harbhajan Singh Khalsa Yogiji Yogi Bhajan Administrative Trust Administrative Trust, under trust agreement dated February 21, 1987 and as later amended

By: _____

Its: _Trustee_____

Date: October 7, 2011



By: _____

Its: _Trustee_____

Date: October 7, 2011

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Stephen J. Hillman.

The case number on all documents filed with the Court should read as follows:

### CV11- 9503 GW (SHx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

---

CV-18 (03/06)  NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY